IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LANDERS AUTO GROUP NUMBER ONE, INC.                           PLAINTIFF

vs.                          NO: 4:07CV00921 BSM

CONTINENTAL WESTERN INSURANCE COMPANY                 DEFENDANT

**ORDER**

Plaintiff Landers Auto Group Number One, Inc. ("Landers") brings this declaratory judgment action against Continental Western Insurance Company ("Continental") seeking a declaration of rights under a liability policy issued to Landers by Continental.

I. BACKGROUND

On October 1, 2004, Continental issued Policy No. CPA 4131661-11, effective October 1, 2004 to October 5, 2005 to Landers, containing the following provisions:[1]

Section II - LIABILITY COVERAGE

A. Coverage

    1. "Garage Operations" - Other Than Covered "Autos"

        a. We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting

---

[1] The complete policy is attached as Exhibits 3 and 4 to Lander's motion for partial summary judgment. The parties do not dispute that the policy in question contains the provisions set forth. *See* Landers Statement of Undisputed Facts, Doc. No. 26, ¶¶ 14-15; Continental's Statement of Undisputed Facts, Doc. No. 30,¶¶1, 19; Landers Response to Continental's Statement of Undisputed Facts, Doc. No. 37, ¶ 1.

> from "garage operations" other than the ownership, maintenance or use of coverage "autos".
>
> We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when applicable Liability Coverage Limit of Insurance – "Garage Operations" –Other Than Covered "Autos" has been exhausted by payment of judgments or settlements.

> b. This insurance applies to "bodily injury" and "property damage"
> only if:
>
> (1) The "accident" occurs in the coverage territory; and
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.

SECTION VI – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

. . .

L. "Loss" means direct and accidental loss or damage. But for Garagekeepers Coverage only, "loss" also includes any resulting loss of use.

O. "Property damage" means damage to or loss of use of tangible property.

The Garage Policy also contains the following exclusions:
   B. Exclusions

This insurance does not apply to any of the following.

1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". But for "garage operations" other than covered "autos" this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

6. Care, Custody or Control

"Property damage" to or "covered pollution cost or expense" involving:

. . .

d. Property in the "insured's" care, custody or control.

. . .

14. Loss of Use

Loss of use of other property not physically damaged if caused by:

a. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

The Commercial General Liability Policy contains similar provisions. That policy provides, in part:

SECTION 1 – COVERAGES

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for

"bodily injury" or property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

2. EXCLUSIONS

This insurance does not apply to:

    a.. Expected or Intended Injury

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b. Contractual Liability

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    (1) That the insured would have in the absence of the contract or agreement; or

    (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contractor agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

        (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        (b) Such attorney fees and litigation expenses are for defense of that party against a civil or

>        alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

>    17. "Property damage" means:

>        a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

>        b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The Automobile Dealers Errors and Omissions Insurance portion contains the following coverage"

>    PART VI - TRUTH IN LENDING ACT - ERRORS AND OMISSION LIABILITY COVERAGE

>    1. WE WILL PAY

>    We will pay all sums you become legally obligated to pay as damages because of any negligent act, error or omission resulting in failure to comply with SECTION 130, CIVIL LIABILITY OF TITLE 1 (TRUTH IN LENDING ACT) OF THE CONSUMER CREDIT PROTECTION ACT (PUBLIC LAW 90-321:82 STAT. 146) and as may be amended from time to time.

>    2. WE WILL NOT COVER - EXCLUSIONS -

>    This insurance does not apply to any claim arising out of violation of SECTION 112, CRIMINAL LIABILITY OF THE CONSUMER CREDIT PROTECTION ACT and as may be amended from time to time.

>    SECTION V - GARAGE CONDITIONS

>    A. Loss Conditions

>        2. Duties in the event of accident, claim, suit or loss.

> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> , , ,
>
> b. Additionally, you and any other involved "insured" must:
>
> 1. Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
>
> 2. Immediately send us copies of any requests, demand, order, notice, summons or legal paper received concerning the claim or "suit."
>
> 3. Cooperate with us in the investigation or settlement of the claim or defense against the "suit."

On February 28, 2007, Latwanna Clark ("Clark") filed suit against Landers and Toyota Motor Credit Corporation ("TMC") in the Circuit Court of Saline County, Arkansas, *Latwanna Clark v. Landers Auto Group Limited Partnership, d/b/a Landers Toyota*, No. CV2007-140-3. [Doc. No. 1, Ex. 1] (referred to as "underlying lawsuit"). According to her complaint, Clark purchased a vehicle from Landers in March, 2003, with a $16,000 down payment. Clark financed the balance of the purchase through TMC. Landers co-signed Clark's finance agreement pursuant to a special financing offer, and guaranteed that if Clark did not make the scheduled payments, Landers would make the payments to TMC. Clark subsequently moved to Texas and claims to have made timely payments required by the finance agreement.

The complaint alleges that TMC claimed that it did not receive Clark's January 2004 payment. Clark provided TMC evidence of January 2004 payment by presenting the check

that had been cashed by TMC and that had cleared her bank account. Despite the evidence, TMC refused to credit Clark's account for the January 2004 payment.

The complaint further alleges that, in October 2004, Clark submitted her monthly car payment to TMC, and that TMC claimed to have never received it. On November 20, 2004, Landers repossessed Clark's vehicle, claiming that Clark failed to make her January and October 2004 payments.

Clark filed this lawsuit seeking compensatory and punitive damages and Landers was served with the complaint and summons on June 20, 2007. Landers tendered the lawsuit to its liability insurer, Continental Western Insurance Company, for a defense on June 27, 2007. The letter tendering the case to Continental was written by Landers' lawyer, Daniel R. Carter, and requested that Carter represent Landers. [Doc. No. 30-2]

On July 13, 2007, Continental notified Landers that "[b]ased on the allegations in the complaint that may be construed as a claim under the Truth in Lending Act," (TILA) Continental would defend Landers while reserving its rights. The letter to Landers stated that the coverage applies only to Landers' failure to comply with the TILA. "If it is determined that Landers was not a creditor in the transaction with [Clark] or had no responsibility as a creditor under the [TILA], then" coverage under the TILA Errors and Omission Liability Coverage "would not apply." Continental informed Landers that it had retained another lawyer to handle the defense. [Doc. No. 30-4].

On July 13, 2007, Carter sent a letter to Continental maintaining that, under Arkansas

law, an insured may retain its own attorney whose fees will be paid by the carrier when a reservation of rights letter is issued.  Carter informed Continental that the reservation of rights created an inherent conflict between Landers and the attorney selected by Continental to defend Landers, and that Landers requested to be allowed to select its own counsel.  Carter wrote that Landers requested that Carter defend it as long as the reservation of rights is in place. [Doc. No 30-3]   Continental denied the request.

Landers filed this action on October 1, 2007, seeking a declaration that Continental has a duty to defend Landers in the underlying lawsuit, that Landers may select counsel of its own choosing for representation in the underlying lawsuit at Continental's expense, and that Continental has a duty to indemnify Landers. Continental filed a counterclaim on October 19, 2007, seeking a declaration of rights under the policy it issued to Landers.

Landers has filed a motion for partial summary judgment seeking a declaration that Continental owes it a duty to defend, and that Landers should be able to select its defense counsel at Continental's expense.  Continental has filed a motion for summary judgment seeking a declaration that it does not owe Landers a duty to defend or to indemnify.  Landers counters that the issue of indemnification should not be decided until resolution of the underlying state action.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of

material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III.  DISCUSSION

The insurance policy issued by Continental to Landers does not cover the damages sought by Clark in the underlying lawsuit. Therefore, Continental neither owes Landers a duty to defend nor a duty to indemnify. For this reason, Continental's motion for summary judgment is granted and Landers's motion for summary judgment is denied.

This case involves construction of an insurance policy. The parties agree that Arkansas law controls. *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 455 (8th Cir. 1998) ("State law controls the construction of insurance policies when a federal court is exercising diversity jurisdiction."). Landers asks that the court just address the duty to defend issue, while Continental asks that the court rule on both the duty to defend and the duty to indemnify issue.

The duty to defend is broader than the duty to indemnify. *Mattson v. St. Paul Title Co. of the South*, 277 Ark. 290, 292, 641 S.W.2d 16, 18 (1982). Generally, the duty to defend is determined from the allegations in the pleadings against the insured. *Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 347 Ark. 167, 175-76, 61 S.W.3d 807, 812 (2001). The "duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage." *Id.* at 176, 61 S.W.3d at 813. *See Home Indem. Co. v. City of Marianna*, 291 Ark. 610, 618, 727 S.W.2d 375, 379 (1987) (duty to defend broader than duty to pay damages and it is enough if the *possibility* of damages exists) (emphasis in original); *Commercial Union Ins. Co. of America v. Henshall*, 262 Ark. 117, 123, 553 S.W.2d 274, 277 (1977) ("The duty to defend is broader than the duty to pay the damages and the duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage.")

In testing the pleadings to determine whether a duty to defend exists, the court resolves any doubt in favor of the insured. *Murphy Oil*, 347 Ark. at 178, 61 S. W.3d at 814. Clark alleges the following in her complaint:

8. Soon after purchasing the vehicle, Plaintiff moved to Houston, TX and established a residence. She fully informed all parties of this contract to that fact and continued to make her payments in a regular and timely fashion.

9. However, she began having problems with the Defendant's [sic] in regard to her car loan account # 023-6126447.

10. Defendant Landers had co-signed the finance document with a special finance offer ("100% guarantee") under the guarantee that if Clark did not make the schedule payments on the car then Landers would make the payments to the finance company, "TMC".

11. In January "TMC" began to claim to Plaintiff that it did not receive Clark's January 2004 payment.

12. This claim was proven to be false. They contacted her bank US bank regarding January payment and the bank informed the company that the check had already cleared the bank.

18. Thereafter another dispute arose regarding an October 2004 payment. Plaintiff submitted a $500.00 [payment] in October 2004 directly to "TMC". This was done on or about August 20, 2004.

19. "TMC" claimed the payment was never received. October 2004 payment never cleared the bank account of Ms. Clark, although mailed directly to "TMC" in the same manner as other payments submitted.

20. As a result Plaintiff's 2002 MSLK was repossessed in November 2004 by Landers Toyota with the claim being made that Clark was sixty (60) days late with payments on the loan, assuming from payments that were due in January 2004 and October 2004.

24. Landers Toyota repossessed the vehicle on November 20, 2004 submitting the pay off amount directly to "TMC".

29. Landers Toyota was not negotiating in good faith and intended to resale the vehicle from the start.

32. Plaintiff was never given proper credit by Defendants for payments that she made in January and October.

35. Defendants working jointly failed to credit Plaintiff's payments .. . . on the Mercedes SLK vehicle.

36. Defendant Landers repossessed the said vehicle and sold it even though Plaintiff was not in default at the time.

37. Defendant Landers did not negotiate in good faith to return the vehicle even though Defendant "TMC" was willing to finance the same.

38. Defendant Landers negotiated in bad faith and [had] no intention of doing anything other than reselling the vehicle for a higher price than the pay off value of the car.

39. Plaintiff suffered damages in the amount of approximately $35,000.00 for the wrongful repossession and conversion of her property, for loss of use of the said vehicle, for the embarrassment, humiliation, mental anxiety. She should be compensated in the amount of $1000,000.00 [sic].

41. Defendants violated the provisions of Ark. Code Ann. 4-88-107(a) et. seq, in that acting together, they first did not credit payments lawfully made on an open account and secondly, repossessed Plaintiff's vehicle, then reselling it.

42. As a result, Plaintiff was deprived of the benefit of her bargain, as well as transportation and subjected to severe embarrassment and mental anguish and worry.

The insurance policy issued by Continental to Landers does not cover the damages claimed by Clark in the underlying lawsuit. The policy covers physical damage to automobiles and Clark alleges that she suffered damages when Landers and TMC wrongfully repossessed her car. She does not allege that Landers physically damaged her vehicle. Indeed, any damages awarded to Clark would be awarded as a result of a breach of contract or a violation of the TILA, not as a result of any property damage caused by Landers. *See Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 222, 962 S.W.2d 735, 740 (1998) (failure to comply with an agreement did not constitute property damage). Clark's

TILA claim is for contractual damages, not property damage, based on Landers' financing and repossession of Clark's car.

Finally, the policy specifically excludes loss of use damages resulting from Landers's failure to perform a contract or agreement. And, Clark contends that her car was repossessed because TMC failed to properly credit her account and because Landers failed to perform its duties under the special offer financing agreement.

Because the court finds that any damages which might be awarded Clark would not be covered by the policy, the court finds that Continental has neither a duty to defend nor a duty to indemnify.

## IV.  CONCLUSION

Accordingly,. Continental's motion for summary judgment [Doc. No. 28] is granted and the case is hereby dismissed with prejudice.

IT IS SO ORDERED this 6th day of July, 2009.

_____
UNITED STATES DISTRICT JUDGE